CLEVELAND M. STETSON, ADMINISTRATOR OF THE

ESTATE OF KATHERINE A. STETSON

*vs.*

ORREN G. CAVERLY, EXECUTOR OF THE WILL OF

ERASTUS I. TIBBETTS.

Androscoggin.      Opinion, November 22, 1934.

*Clifford & Clifford*, for plaintiff.
*Ralph W. Crockett*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

BARNES, J.    This case comes up on motion and exceptions. It is an action in assumpsit to recover, in *quantum meruit*, for services as housekeeper and nurse over a period of five years and forty-eight weeks, broken twice only and each time for but a few days.

Service, as housekeeper, was begun some years before the beginning of the period contemplated in the writ. In the beginning Mr. Tibbetts was a mill worker, caring for his house and grounds, a cow and some poultry; and for a time he paid Katherine A. Stetson, plaintiff's intestate, a small wage.

Later he ceased work and required more of his housekeeper, with the result that she left his employ in 1926 and returned to her home.

After several interviews at her house, Mr. Tibbetts induced her to go back into his service.

It is admitted that the precise terms of re-engagement can not be given, and it is agreed that Mr. Tibbetts promised her he would take care of her in his will. The evidence shows that she was a robust woman, a good housekeeper, and an excellent nurse of the old type. In December of 1927 the old gentleman suffered an apoplectic shock, characterized by his physician as "very severe." His speech was severely affected, his right side was paralyzed and he was for a time confined to his bed, with no control of elimination.

After some weeks he regained strength sufficient to sit in a chair, and in the course of time was able to get around the house with help. The doctor testified that he needed a great deal of care, had to be watched, from danger of falling, and that it was very difficult for him to eat.

On the fourteenth of December, 1927, he made a will, leaving to Mrs. Stetson all his real estate, "for the term of her natural life,

to occupy the same, or to rent and receive the income," also the sum of three thousand dollars.

Many witnesses testified to Mrs. Stetson's statements that she was not to receive wages, but was to be taken care of through the provisions of her employer's will.

Some of the conversations, one as late as in 1929, were testified to as having been had in the presence of Mr. Tibbetts.

It is in the record that, in the winter of 1928, Mr. Tibbetts said, in the presence of Mrs. Stetson and the witness, "Katie, I have made my will, and I have left you $3,500 in money and also the home place . . . you have been well taken care of."

About the first of June, 1931, a professional nurse was required. Mr. Tibbetts was then in a condition of pitiable helplessness.

For a week the nurse directed the care of the patient, Mrs. Stetson leaving the house but twice, on one occasion to visit her son then in a hospital.

She was the sole caretaker for a period of about six weeks after the "second shock," then sickened, and died, August 17, 1931.

Thus the devise and legacy to her lapsed, and we have to consider the claim of her administrator to recover for her estate, in *quantum meruit*, the fair value of her services performed between the time of her return to service and her fatal illness.

The jury returned a verdict of $3,045.

Defendant's counsel does not discuss the amount of the verdict, and that feature is not in issue.

His contention is that she rendered the services proven for the privilege of a home and under an agreement with Mr. Tibbetts that he would provide for her in his will, and that the evidence, as matter of law, does not warrant a verdict for the plaintiff.

On the motion for new trial, the Court is convinced that, unless evidence incurably prejudicial is found to have been admitted over exception, or that exception to a portion of the Judge's charge should be sustained, the verdict will stand.

The exceptions are ten in number, and their consideration requires a recital of certain procedure in probate of the Stetson estate.

On September 8, 1931, the plaintiff, Katherine's son, qualified as administrator of his mother's estate.

September 23, 1931, Mr. Tibbetts executed his last will, making legacies to people of his blood, Edith G. Caverly, a half-sister being residuary legatee.

September 25, 1931, this Mrs. Caverly was duly appointed Conservatrix of the estate of Mr. Tibbetts.

Bill for $6,123, balance for Katherine's services was presented to the Conservatrix, on or about October 1, 1931.

Inventory of estate of Mrs. Stetson, containing no item of bill payable to the estate of plaintiff's intestate, and with affidavit of Stetson, Administrator that it "contains a true Inventory of all estate of said Katherine A. Stetson that has come to his possession or knowledge," was filed on or about March 23, 1932, the same showing nothing to distribute.

A first and final account was prepared on March 9, 1932, and allowed by the Court, April 12 following.

Orren G. Caverly, husband of the Conservatrix of Mr. Tibbetts, was duly commissioned as executor of the last will of Mr. Tibbetts and qualified for the trust, on July 25, 1932.

Process entitled Pet'n for Administration D.B.N. in the estate of Mrs. Stetson was filed sometime after November 26, 1932, by Mr. Stetson, who was administrator, and the same was allowed in Probate Court on January 10, 1933.

Proof of claim against the estate of Mr. Tibbetts was, on January 24, 1933, filed by Stetson, Administrator, designating himself "Administrator D.B.N.," for balance for services of Mrs. Stetson, in the sum of $7,083.00.

Motion to amend Proof of Claim by striking out the words *de bonis non* where they appear in the original was filed and allowed by the Probate Court on September 25, 1933, and the Proof of Claim was amended.

It then appearing that in the motion to amend the Proof of Claim two signatures were by typewriter, instead of by the hands of the persons who should have signed, a motion to amend by inserting, in lieu of the typewritten signatures, true signatures of the persons involved was filed, and allowed on November 23, 1933, and the motion to amend was amended.

The first five exceptions are based on conclusion of counsel that certain of the irregularities in probate proceedings, above set out,

vitiated the proceedings and rendered the papers offered as exhibits in amended form inadmissible.

No recovery in our courts of law can be had in suit on a claim against the executor of one deceased testate (with exceptions not of moment here) unless the claim, properly supported by affidavit, shall have been presented to the executor in writing, either before or within twelve months after his qualification as such executor. R. S., Chap. 101, Sec. 14.

It is argued that because the claim for services was signed: "Cleveland M. Stetson Administrator De Bonis Non Katherine A. Stetson Estate," it is not a "claim" within the statute above quoted.

Without citing authorities to the fact that an administrator, once duly appointed and qualified, unless he becomes permanently insane, has been discharged by due process or upon his petition, or has died, can, when property of his intestate comes to his possession or is known to him to exist, come to the proper court of probate and proceed to distribution, it is sufficient for the purposes of this discussion to state that this Court regards the proof of claim signed by Stetson, Adm'r. d.b.n. as in fact and law a petition of the same Stetson as administrator, and its reception by the probate court as a proper step in procedure toward completion of the settlement of an estate erroneously deemed closed.

We regard the words *de bonis non* as surplusage wherever they occur in the proceedings underlying this action.

Hence the first five exceptions fail.

Exceptions, Nos. 6 and 8, arose in this wise: the defendant Orren G. Caverly, was asked on cross-examination with reference to Mr. Tibbetts' last will, "And your wife is the chief beneficiary under the will of Mr. Tibbetts?" Over objection his answer was admitted and exception taken. And when the last will of Mr. Tibbetts was offered by plaintiff as an exhibit, it was admitted over objection.

The evidence objected to was clearly admissible as bearing on the effect of bias or prejudice on the part of the witness; and subsequently, when Mrs. Edith G. Caverly was recalled, for defendant, she was asked, in cross-examination, "And you were named chief beneficiary under that new will, weren't you?" and, without protest of counsel for defendant, she answered, "I was."

Over the objection of defendant Mr. Caverly was required to state the amount of Mr. Tibbetts' estate.

There was evidence of an arrangement or understanding between Mrs. Stetson and Mr. Tibbetts that she was to receive pay for her services in his behalf.

This was an issue of major importance; and whether the estate were puny or of substantial size was a fact which the jury were entitled to know.

As to whether Mr. Tibbetts expected to pay his housekeeper and nurse and his knowledge of his ability to do so, the value of his estate is admissible in evidence. The jury properly took this evidence, with instruction from the Court, "The only legitimate purpose of the testimony in that respect is its claimed tendency to corroborate what the plaintiff asserts,—that here was a man who had the means and the ability to pay for such services as were rendered; but in no sense is it to be taken by you as a gauge of what (amount) he should pay."

Exception No. 9 is to expressions in the charge of the Court, explanatory of the nature of the contract or understanding under which Mrs. Stetson returned to her work for Mr. Tibbetts in 1926.

In our view the instructions given on this point were admissible and it is difficult to perceive how language referring to the time when the reward was to be receivable could be better stated to the lay mind than by the use of the word the Court chose, "postponement."

Nine written requests for instructions to the jury were presented to the Court. They were, each of them, directed to matter objected to during the introduction of the evidence, all of which have been presented above in reasonable fullness, and the substance of each had been considered in the charge. The Justice refused to give such instructions, "except as given in the charge," and we conclude them properly denied. So the exceptions fail, and the motion, as above suggested, falls with them.

*Motions and Exceptions overruled.*