1997 ME 59

**Marc TODD**

v.

**Ratnakar ANDALKAR et al.**

Supreme Judicial Court of Maine.

Argued Feb. 5, 1997.
Decided April 1, 1997.

William A. Fogel (orally), Daniel G. Lilley, Daniel G. Lilley Law Offices, P.A., Portland, for plaintiff.

Paul F. Macri (orally), Steven D. Silin, Berman & Simmons, P.A., Lewiston, for Ratnakar Andalkar.

Russell B. Pierce, Jr. (orally), David C. Norman, Norman, Hanson & DeTroy, Portland, for Hugh P. Robinson.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] Marc Todd appeals from the judgment entered in the Superior Court (Oxford County, *Fritzsche, J.*) following a jury verdict in favor of Stephens Memorial Hospital, Ratnakar Andalkar, and Hugh Robinson on his complaint seeking damages for their alleged professional negligence in his medical care.[1] Todd contends that the court abused its discretion by denying him the right to cross-examine Andalkar's expert witness, Jeremy Morton, on issues of potential bias. We agree, and accordingly, we vacate the judgment.

[¶ 2] The record discloses the following: On the evening of April 17, 1987, Todd fell from a roof and was transported by ambulance to Stephens Memorial Hospital in Norway. The initial evaluation in the hospital disclosed that Todd was suffering from intra-abdominal bleeding. The pre-operative test results available to Andalkar revealed, *inter alia*, that Todd's left kidney was not functional. During the surgical procedure, Andalkar determined the source of the bleeding to be a ruptured spleen and removed it.

[¶ 3] Tests performed in the next few days established that Todd's left renal artery had been severed in the fall and that only an unstable blood clot was preventing serious internal bleeding. After consulting with

---

1. Todd stipulated to the dismissal of his appeal from the judgment entered in favor of Stephens Memorial Hospital on October 25, 1996.

Robinson, Andalkar advised the performance of an elective nephrectomy to remove Todd's avulsed non-functional left kidney. Andalkar performed this surgical procedure, and Robinson assisted. There was severe bleeding from a torn aorta during the course of the surgery. Following Andalkar's consultation with Morton during the course of the surgery, Morton flew from Portland to render emergency assistance. As a result of the loss of blood flow to his right kidney during the operation, Todd has permanently lost the function of his right kidney.

[¶ 4] Following compliance with the Health Security Act, 24 M.R.S.A. §§ 2501–2961 (1990 & Supp.1996), that governs claims for professional negligence against physicians and surgeons, and the panel's unanimous finding that the alleged acts or omissions did not constitute a deviation from the standard of care by Andalkar and Robinson, Todd instituted the present action. Prior to the trial, Andalkar filed a motion *in limine* seeking to preclude Todd from cross-examining his expert, Jeremy Morton, on his relationship with Maine Mutual Insurance Company (MMIC), the insurer of Andalkar and Robinson. The court granted in part and denied in part Andalkar's motion ruling that Todd would be "permitted to explore the issue of potential bias, without referring to insurance of Maine Mutual. . . ."

[¶ 5] At the trial, the court, out of the presence of the jury, permitted Todd to *voir dire* Morton concerning his connections with MMIC. Morton's testimony may be summarized as follows: He was a founder of MMIC and is an insured of that company. He currently serves as a vice president and makes executive decisions concerning how the company is operated, including setting

his compensation for expert testimony in the present case. He considers it his duty to operate the company in a financially responsible manner. He is paid an annual salary of $50,000 for his service as a corporate officer. He is an ex-officio member of all committees, serves on the executive committee, and has reviewed claims in the past. He did not, however, review Todd's claim or discuss it with anyone at MMIC because of his role as "treater and expert." Following the *voir dire* examination, although the court recognized Morton's potential bias, it excluded any reference to Morton's relationship with MMIC from Todd's cross-examination of Morton. The court noted that there was a sufficient basis for its ruling pursuant to M.R.Evid. 411,[2] but on the basis that the probative value of the evidence adduced on the *voir dire* examination was substantially outweighed by the danger of its unfair prejudice to the defendants, its ruling was pursuant to M.R.Evid. 403.[3] Morton subsequently testified that Andalkar and Robinson acted consistent with the appropriate standards of medical care in their treatment of Todd.

[¶ 6] Todd contends that the court erred by prohibiting him from cross-examining Morton on his relationship with MMIC. He argues that because the testimony of experts is essential to the case,[4] the ruling deprived the jury of facts needed to fairly judge the credibility of the expert testimony presented by Morton. We agree. We review the trial court's ruling excluding proffered evidence pursuant to M.R.Evid. 411 or 403 for an abuse of discretion. *See Miller v. Szelenyi*, 546 A.2d 1013 (Me.1988) (court did not abuse its discretion by its denying motion to exclude all reference to insurance cover-

---

2. M.R.Evid. 411 provides:

   Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully.

3. M.R.Evid. 403 provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

4. It is an established principle that "when the negligence and harmful results are not sufficiently obvious to be within common knowledge, expert evidence is essential to sustain an action for negligence against a physician or surgeon." *Seven Tree Manor v. Kallberg*, 1997 ME 10, ¶ 6, 688 A.2d 916 (Me.1997) (citation omitted). Expert evidence generally also is presented by the defendant as to the appropriate standards of medical care and the defendant's compliance with those standards in treating the plaintiff.

age); *Bailey v. Sears, Roebuck & Co.,* 651 A.2d 840, 843 (Me.1994) (ruling pursuant to M.R.Evid. 403 reviewed for abuse of discretion).

[¶ 7] Todd has the burden of demonstrating that the trial court abused its discretion by excluding the evidence and that he was thereby prejudiced. *State v. Poland,* 426 A.2d 896, 898 (Me.1981). "Prejudicial injury occurs only if the evidence excluded was relevant and material to a crucial issue and if it can with reason be said that such evidence, if admitted, would probably have affected the result or had a controlling influence on a material aspect of the case." *Taylor v. Hill,* 464 A.2d 938, 943 (Me.1983) (quoting *Minott v. F.W. Cunningham & Sons,* 413 A.2d 1325, 1329 (Me.1980)).

[¶ 8] It is well established that both bias and prejudice are of great value in assessing credibility, and courts liberally admit evidence showing relationships or circumstances tending to impair a witness's impartiality. *See Irish v. Gimbel,* 1997 ME 50, ¶ 25, 691 A.2d 664 (Me.1997) (because relevant, material, and crucial to the issue of witness's bias and prejudice, court abused discretion by excluding on cross-examination evidence of settlement of action against the defendant's expert medical witness involving similar injuries to those alleged by plaintiffs); *State v. Whitman,* 429 A.2d 203 (Me.1981) (defendant should have been permitted to testify to personal interest of prosecuting witness arising out of companion civil suit); *Stetson v. Caverly,* 133 Me. 217, 221–222, 175 A. 473 (Me.1934) (testimony that executor's wife was chief beneficiary and the amount of the estate "clearly admissible" over objection on cross-examination to show bias); *State v. Salamone,* 131 Me. 101, 159 A. 566 (1932) (evidence admissible on cross-examination to demonstrate hostility toward party); *Ross v. Reynolds,* 112 Me. 223, 226, 91 A. 952 (1914) (evidence on cross-examination of defendant's witness that witness had within past year sued plaintiff admissible "as common and proper mode of impeachment" to show bias or prejudice of witness). "Bias is never a collateral matter nor one on which the cross-examiner is bound to take the witness's answer. Extrinsic evidence to prove bias is admissible. Nor is it necessary to lay any particular foundation to prove a witness's bias or personal interest." Field & Murray, *Maine Evidence* § 607.2 at 6–25 (3d ed. 1994) (citations omitted). *See also* M.R.Evid. 611(b) ("A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. . . .").

[¶ 9] In *Miller v. Szelenyi,* 546 A.2d 1013 (Me.1988), we construed M.R.Evid. 411, which states, "Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully," to determine what discretion the trial court had pursuant to this rule to admit or exclude evidence of lack of insurance as it related to the motive for Szelenyi's refusal to perform certain medical services. In determining that the trial court did not abuse its discretion by denying Szelenyi's motion *to exclude* all references to his insurance coverage, we stated:

> Even when insurance evidence may affect the issue of liability, however, we do not read Rule 411 as a flat prohibition admitting of no discretion whatsoever. Rather, Rule 411 is a codification of the "general standard" that insurance evidence should be excluded, unless "extraordinary special circumstances require it."

546 A.2d at 1019 (citing *Duguay v. Pomerleau,* 299 A.2d 914, 916 (Me.1973)); *see also* Field & Murray, *Maine Evidence* § 411.1 at 4–91 (3d ed. 1992) (rule does not compel the exclusion of evidence of insurance when relevant on the issue of bias or prejudice of a witness). In the instant case, the proposed evidence was not to establish that the defendants acted negligently or otherwise wrongfully, but to establish the bias or prejudice of an expert medical witness of the defendants. Accordingly, we conclude that M.R.Evid. 411 did not require the exclusion of the proposed evidence.

[¶ 10] Although Morton's extensive financial and personal relationships with MMIC were clearly relevant to his credibility, its admission was still subject to the court's discretion pursuant to M.R.Evid. 403. M.R.Evid. 403 provides that a trial court, acting in its discretion may exclude even

relevant evidence "if its probative value [is] substantially outweighed by the danger of *unfair* prejudice...." *State v. DiPietro,* 420 A.2d 1233, 1235 (Me.1980) (emphasis added). Unfair prejudice is that which is likely to cause the jury to "consciously or unconsciously base its verdict on something other than established propositions in the case." Field & Murray, *Maine Evidence* § 403.1 at 4–16 (3d ed. 1993). The risk is that the jury will assume the insurance is evidence of the defendant's negligence or wrongdoing or will award inflated damages should a plaintiff prevail. These concerns, however, are sufficiently addressed by the court giving requested cautionary or limiting instructions to the jury. We are satisfied in the circumstances of this case that Todd has met his burden of demonstrating that the trial court abused its discretion.

[¶ 11] Contrary to the arguments of and the cases cited by the defendants, the excluded evidence in the instant case is not merely cumulative or duplicative of other evidence already in the record. The jury received no evidence concerning Morton's personal and financial relationship with MMIC. Accordingly, the exclusion of this evidence, critical to the jury's determination of the witness's credibility, cannot be said to be harmless.

The entry is:

Judgment vacated.

