

STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCD-CV-15-16 ✓

HOLLY WILSON, individually and )
as next friend of CASSIDY WILSON, )
and KERRI WILSON, as personal )
representative of the estate of )
RYAN DALE WILSON, )
)
      Plaintiffs, )
)
      v. )
)
)
)
DANIEL G. LILLEY, P.A. and )
DANIEL G. LILLEY, ESQ., )
)
      Defendants. )

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Defendants Daniel G. Lilley, P.A. and Daniel G. Lilley, Esq. (the "Lilley

Defendants") have moved for summary judgment on all claims brought against

them by Plaintiffs Holly Wilson, individually and as next friend of Cassidy Wilson,

and Kerri Wilson, as personal representative of the estate of Ryan Wilson. For

the following reasons, the Lilley Defendants motion is granted.

## BACKGROUND

Holly Wilson and Ryan Wilson[1] are the parents of Cassidy Wilson. (Pls.

Add'l S.M.F. ¶ 1; Defs. Reply S.M.F. ¶ 1.) On August 31, 2000, Holly and Ryan

went to Mercy Hospital for Holly to give birth to Cassidy. (*Id.*) Maile Roper,

---

[1] Ryan Wilson died during the pendency of this action on February 4, 2016. (Pls. Mot.
Amend Compl. ¶ 3.) Kerri Wilson was appointed as personal representative of his
estate and has been substituted as a party in this action. (*Id.* ¶ 4; Am. Compl. ¶¶ 5-6.)

D.O. was Holly's physician during her pregnancy. (*Id.* ¶ 3.) Cassidy's delivery was difficult. (Defs. Supp'g S.M.F. ¶ 3; Pls. Opp. S.M.F. ¶ 3.) Holly suffered an arrest disorder during labor and delivery. (Pls. Add'l S.M.F. ¶ 7; Defs. Reply S.M.F. ¶ 7.) Cassidy was delivered by emergency cesarean section on September 1, 2000. (*Id.* ¶ 15.) Cassidy required immediate resuscitation and had to be transferred to a neonatal intensive care unit, where she spent the next twenty-six days following her birth. (*Id.* ¶¶ 17, 22.) In October 2001, Cassidy was diagnosed with cerebral palsy secondary to hypoxic ischemic encephalopathy. (*Id.* ¶ 24.) Cassidy is physically and cognitively disabled. (*Id.* ¶¶ 25-26.)

Holly Wilson and Ryan Wilson entered into a contingent fee agreement with the Lilley Defendants on December 17, 2001. (*Id.* ¶¶ 33-34.) The Lilley Defendants filed a notice of claim against Mercy Hospital, Mercy Primary Care Centers, and Dr. Roper (the "Medical Defendants") on May 20, 2005.[2] (*Id.* ¶ 37.) The notice of claim included claims on behalf of Cassidy as well as individual claims on behalf of Holly and Ryan. (*Id.* ¶¶ 37-38.) Pursuant to the Maine Health Security Act, the Wilsons' claims were presented to a prelitigation screening panel in 2008. (*Id.* ¶ 60, Defs. Ex. 30.) On December 15, 2008, the

---

[2] Hereafter, the underlying action against the Medical Defendants is referred to as the "*Wilson v. Mercy*" case or trial.

2

panel entered unanimous decrees in favor of the Medical Defendants on both negligence and causation. (*Id.*)

The Lilley Defendants filed a complaint against the Medical Defendants on January 2, 2009. (*Id.* ¶ 41; Pls. Ex. 23.) The complaint included claims on behalf of Cassidy, Holly, and Ryan. (*Id.* ¶¶ 41-42; Pls. Ex. 23.) On November 4, 2009, the Medical Defendants filed a motion to dismiss Holly's and Ryan's individual claims as barred by the statute of limitations. (*Id.* ¶ 49.) The *Wilson v. Mercy* trial began on December 8, 2009. (*Id.* ¶ 105.) On the first day of trial, the court dismissed Holly's and Ryan's individual claims as time-barred. (*Id.* ¶ 52.) On December 21, 2009, the jury returned a verdict on the remaining claims in favor of the Medical Defendants. (*Id.* ¶ 106.)

Holly Wilson and Ryan Wilson filed this action against the Lilley Defendants for legal malpractice and other claims with the Superior Court on December 9, 2014. This action was subsequently transferred to Business and Consumer Court. The Lilley Defendants filed their motion for summary Judgment on August 22, 2016. Following an extension of time, Plaintiff filed their opposition to summary judgment on September 26, 2016. Defendants filed a reply on October 14, 2016. On November 7, 2016, the court granted Plaintiffs request to file a supplemental affidavit to support its additional statements of material fact.

## STANDARD OF REVIEW

### A.   Summary Judgment Standard

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A fact is material if it can affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the fact finder must choose between competing versions of the truth. *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts establishing a prima facie case for each element of the claim challenged by the moving party. M.R. Civ. P. 56(e); *Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234. If the non-moving party fails to present sufficient evidence of the challenged elements, then the moving is entitled to a summary judgment. *Watt v. UniFirst Corp., 2009 ME 47*, ¶ 21, 969 A.2d 897.

4

## B. Legal Malpractice

Generally, to assert a claim for legal malpractice, the plaintiff must prove that the defendant attorney breached a duty to conform to a certain standard of conduct owed to the plaintiff, and that the defendant's breach of duty proximately caused the plaintiff's injury or loss. *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121. The plaintiff must also prove that, but for the defendant's breach of duty, the plaintiff would have achieved a more favorable result. *Id.* ¶ 9; *Garland v. Roy*, 2009 ME 86, ¶¶ 19-20, 976 A.2d 940.

Although breach is a question fact for the jury, the existence of a duty is a question of law for the court. *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 17, 60 A.3d 759. "Attorneys are under a legal obligation to discharge their duties and execute the business entrusted to them with a reasonable degree of care, skill, and dispatch, and if a client is injured by the fault or negligence of the attorney, the attorney is liable." *Garland*, 2009 ME 86, ¶ 19, 976 A.2d 940. Expert testimony is usually required to establish the appropriate standard of care and whether the defendant attorney breached that standard of care, unless the breach or lack thereof is "so obvious" that it can be determined by the court as a matter of law or is within the ordinary knowledge of a layperson. *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 26, 8 A.3d 677.

5

In legal malpractice claims, the same rules of causation apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty. *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 10 n.8, 718 A.2d 186. Proximate cause exists where the evidence, and any reasonable inferences drawn from the evidence, demonstrate that the defendant attorney's negligence played a substantial part in bringing about or actually caused the plaintiff's injury or damages and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the attorney's negligence. *Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121. "It is appropriate for a trial court to keep highly speculative causation issues, from the jury in a legal malpractice case." *Steeves*, 1998 ME 210, ¶ 13, 718 A.2d 186. The mere possibility that the defendant attorney's negligence might have proximately caused the plaintiff's loss is not enough. *Id.* ¶ 12. If the plaintiff's assertions of causation rest on pure speculation or conjecture, or where the probabilities are evenly balanced, the defendant is entitled to judgment as a matter of law. *Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121.

In order to demonstrate that, but for the defendant attorney's breach of duty, they would have achieved a more favorable result, the plaintiff must provide expert testimony that the plaintiff would have prevailed on the

6

underlying claims if not for the defendant's negligence. *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶¶ 13-14, 742 A.2d 933.

## ANALYSIS

Plaintiffs' amended complaint asserts claims for legal malpractice based on both negligence and breach of fiduciary duty. Plaintiffs assert the Lilley Defendants committed legal malpractice and breached their fiduciary duty in representing Cassidy Wilson by (1) failing to call live experts at the panel hearing, and (2) failing to call Cassidy's treating physician at trial. (Pls. Opp'n to Defs. Mot. Summ. J. 9, 18). Plaintiffs assert the Lilley Defendants committed legal malpractice and breached their fiduciary duty in representing Holly Wilson and Ryan Wilson by failing to file notice of Holly's and Ryan's individual claims against the Medical Defendants within the three-year statute of limitations. (*Id.* at 21-22.) Plaintiffs also assert that Lilley Defendants engaged in fraud and fraudulent concealment by knowingly failing to disclose to Holly Wilson and Ryan Wilson that their individual claims were time-barred. (*Id.* at 6.)

### A. Cassidy Wilson's Legal Malpractice Claims for Failure to Call Live Experts at the Panel Hearing

The Maine Health Security Act mandates that all actions for professional negligence against healthcare providers or practitioners must be submitted to a prelitigation screening panel. 24 M.R.S. 2903(1); *Saunders v. Tisher*, 2006 ME 94, ¶ 13, 902 A.2d 830. The panel, composed of a chairperson, an attorney,

7

and a medical practitioner, conducts a hearing during which the each party has an opportunity to present evidence and to cross-examine opposing witnesses. 24 M.R.S. § 2854(1). At the conclusion of the hearing, the panel determines (1) whether the healthcare provider or practitioner's conduct deviated from the applicable standard of care, and (2) whether the healthcare provider or practitioner's conduct proximately caused the plaintiff's injuries. *Id.* § 2855(1). If the panel finds unanimously against the plaintiff regarding negligence or causation, the panel's decrees are admissible to the jury in any subsequent action for medical malpractice. *Id.* § 2857(1)(C). If the panel is divided on either question, its decrees are inadmissible at a subsequent trial. *Id.* § 2857(1).

The Lilley Defendants did not call any live experts at the panel hearing in the *Wilson v. Mercy* case. (Pls. Add'l S.M.F. ¶ 57; Defs. Reply S.M.F. ¶ 57.) Following the hearing, the panel entered unanimous decrees in favor of the Medical Defendants on both negligence and causation. (*Id.* ¶ 60.) The unanimous decrees were admitted into evidence at trial and were discussed by the Medical Defendants' counsel, Christopher Nyhan, Esq., during his opening and closing statements. (*Id.* ¶¶ 61-63, 65.) The jury ultimately found for the Medical Defendants. (*Id.* ¶ 106.)

The Lilley Defendants assert that their decision to not bring live experts to the panel hearing was not a breach of the standard of care because depositions are admissible at the panel hearing and, under Maine law, depositions are to be given the same weight as live testimony. (Defs. Mot. Summ. J. 5-6.) Plaintiffs assert there is, at least, a genuine issue of material fact whether the Lilley Defendants decision was a breach of the standard of care. (Pls. Opp'n to Defs. Mot. Summ. J. 9-10.) Plaintiffs' legal expert, Gerald F. Petruccelli, Esq., testified that the Lilley Defendants' decision to not call live experts at the panel hearing was "beneath the standard of care" because live, in-person testimony is more persuasive evidence than a deposition. (Pls. Add'l S.M.F. ¶¶ 78-79.) Plaintiffs also cite testimony from the Medical Defendants' counsel, Attorney Nyhan, who stated that it is "vital" to call expert witnesses at panel hearings, that live expert testimony was particular important in the *Wilson v. Mercy* case because of its complexity, and that the Lilley Defendants' decision was "per se, a deviation from the standard of care."[3] (*Id.* ¶¶ 75, 77.)

---

[3] The Lilley Defendants object to Plaintiffs' offering opinion testimony from Attorney Nyhan because Attorney Nyhan has not been designated as an expert witness in this case. (Defs. Reply to Pls. Opp'n to Defs. Mot. Summ. J. 2; Defs. Reply S.M.F. ¶¶ 75-77, 81-83, 92-94, 98, 100-04.) The Lilley Defendants have also filed separate a motion *in limine* to exclude Attorney Nyhan's opinion testimony from consideration on summary judgment and at trial. (Defs. Reply to Pls. Opp'n to Defs. Mot. Summ. J. 2; Defs. Mot. in Limine 1-5.) However, the court need not decide this issue. As discussed in detail *infra*, even considering Attorney Nyhan's opinion testimony, Plaintiffs have not put forth sufficient prima facie evidence to survive summary judgment.

Although there may be a genuine issue of material fact whether the Lilley Defendants breached the standard of care, Plaintiffs have failed to put forth sufficient prima facie evidence that the Lilley Defendants' decision to not call live experts proximately caused injury to Cassidy Wilson and that, but for Lilley Defendants' decision, Cassidy Wilson would have obtained a more favorable result. Plaintiffs' theory of causation is twofold. Plaintiffs assert that the Lilley Defendants' decision not to call live experts at the panel hearing caused the panel to enter unanimous decrees in favor of the Medical Defendants, and that the unanimous decrees caused harm to the Cassidy Wilson. (Pls. Opp'n to Defs. Mot. Summ. J. 15-16.)

First, Plaintiffs cite Attorney Nyhan's testimony that the Lilley Defendants' decision to not call live experts was "vital" at the panel hearing. (Pls. Add'l S.M.F. ¶ 76.) Plaintiffs' legal expert, Attorney Petruccelli, also asserts that, if the Lilley Defendants had presented live expert testimony, it is more likely than not that one of the two "law-trained" panelists would have found for Plaintiffs, dividing the panel and rendering the panel's decrees inadmissible at trial. (*Id.* ¶ 80.)

Second, Plaintiffs assert that unanimous panel decrees "have a substantial – and in some cases, determinative – impact on the clients' ability to settle their case" and that, without a unanimous panel decree, the Medical Defendants

10

would have been deprived of evidence that Attorney Nyhan considered "key, vital, and indispensable" to the jury deliberations in *Wilson v. Mercy*. (Pls. Opp'n to Defs. Mot. Summ. J. 16-17; Pls. Add'l S.M.F. ¶¶ 81, 83.)

Foremost, Attorney Nyhan's testimony regarding the Lilley Defendants decision not to call live experts at the panel hearing is not evidence of causation. Attorney Nyhan offered no evidence or opinion whether the Lilley Defendants' decision played a substantial part in or directly caused the unanimous panel decrees in favor of the Medical Defendants. Attorney Nyhan also offered no evidence or opinion that, but for the Lilley Defendants' decision, Cassidy Wilson would have achieved a more favorable result. According to the testimony cited by Plaintiffs, Attorney Nyhan simply testified that the Lilley Defendants' decision not to call live experts was "vital." (Pls. Add'l S.M.F. ¶ 76.) While this evidence may suggest that the Lilley Defendants' decision was a breach of the standard of care, it is not evidence of causation.

Plaintiffs' only evidence of causation is the opinion of their legal expert, Attorney Petruccelli. As previously discussed, it is the trial court's duty to keep highly speculative causation issues from the jury in legal malpractice cases. *Steeves*, 1998 ME 210, ¶ 13, 718 A.2d 186. The mere possibility that a defendant attorney's negligence might have caused the plaintiff's loss is not enough. *Id.* ¶ 12. If the plaintiff's theory of causation rests on speculation or

11

conjecture, the defendant is entitled to judgment as a matter of law. *Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121.

Attorney Petruccelli has offered no foundation or explanation for his opinion that, if the Lilley Defendants had presented live expert testimony at the panel hearing, then one of the two "law-trained" panel members would have found for Plaintiffs. When questioned about the foundation for his opinion, Attorney Petruccelli testified he never spoke to the panelists in the *Wilson v. Mercy* case; that he has never served as a panelist; that he could not recall ever having a conversation with a panelist about a panel matter; and that he could only remember a couple of instances in the distant past when a panelist had expressed his unsolicited views after a panel hearing about what evidence did or did not impress him. (Defs. Reply S.M.F. ¶ 80; Petruccelli Dep. 93:8-23.) Attorney Petruccelli also testified that, although the Lilley Defendants' decision was beneath the standard of care, "Whether or not it would have made a difference, you can argue up and down that nobody can be sure what would happen. It just seems to me, as the old saying goes, that the race doesn't always go to the swift or the battle the strong but that's the way you bet." (Defs. Reply S.M.F. ¶ 80; Petruccelli Dep. 94:15-19.)

Attorney Petruccelli's testimony demonstrates that his opinion regarding the possible affect that live expert witnesses may have had on the panel is

12

without foundation and based on speculation. Without proper foundation, a jury would be unable to assess or weigh Attorney Petruccelli's opinion without resorting to speculation of its own. *See Allen v. McCann*, 2015 ME 84, ¶¶ 9-11, 120 A.3d 90 (stating that an attorney's assertion of opinion without further explanation or detail does not provide a jury with sufficient foundation upon which it can assess the evidence without resorting to speculation). Therefore, Attorney Petruccelli's testimony is insufficient evidence that the Lilley Defendants' decision to not call live experts caused the unanimous panel decrees in favor of the Medical Defendants.

Because Plaintiffs have failed to put forth sufficient evidence to support the first part of their theory of causation, Plaintiffs' theory of causation fails in its entirety. Therefore, the court need not reach the second part of Plaintiffs' theory of causation that the unanimous decrees caused injury to Cassidy Wilson. Because Plaintiffs have failed to put forth sufficient evidence of causation, the Lilley Defendants are entitled to summary judgment on Plaintiffs' claim that the Lilley Defendants committed legal malpractice by failing to present live witnesses at the panel hearing.

B.   Cassidy Wilson's Legal Malpractice Claims for Failure Call her Treating Physician at Trial

Stephen Rioux, M.D. has been Cassidy Wilson's treating pediatric neurologist since September 2001. (Pls. Opp'n to Defs. Mot. Summ. J. 18; Pls.

13

Add'l S.M.F. ¶ 23; Defs. Reply S.M.F. ¶ 23.) In October 2001, Dr. Rioux diagnosed Cassidy with cerebral palsy secondary to hypoxic ischemic encepalophathy. (Pls. Add'l S.M.F. ¶ 24; Defs. Reply S.M.F. ¶ 24.) Prior to the *Wilson v. Mercy* trial, the Medical Defendants filed a motion in limine to preclude Dr. Rioux from testifying regarding the cause of Cassidy Wilson's injuries because the Lilley Defendants had designated Mark Hiatt, M.D., a neonatologist, as their causation expert, and the Lilley Defendants had not properly designated Dr. Rioux as an expert. (*Id.* ¶ 85.) The court ruled that Dr. Rioux's proposed testimony regarding causation would be duplicative of Dr. Hiatt's testimony and was precluded under the one-expert-per-issue rule. (*Id.* ¶ 87.) Accordingly, the Lilley Defendants did not call Dr. Rioux as a witness during the *Wilson v. Mercy* trial and relied on Dr. Hiatt's testimony regarding causation. (*Id.* ¶ 88.)

Plaintiffs assert the Lilley Defendants' failure to call Dr. Rioux as a witness was a breach of the standard of care in two ways: (1) the Lilley Defendants breached the standard of care by failing to understand the importance of Dr. Rioux's testimony; and (2) the Lilley Defendants breached the standard of care by failing to explain to the court that Maine case law permitted both Dr. Hiatt and Dr. Rioux to testify regarding causation. (Pls. Opp'n to Defs. Mot. Summ. J. 18.)

14

Regarding their first assertion, Plaintiffs argue that Dr. Rioux's testimony "would have been singularly powerful to jury" because, according Attorney Nyhan, Dr. Rioux was "basically it" for pediatric neurologists in Maine and that "it was essentially bad news" for insurers and defense attorneys if Dr. Rioux testified in a case. (Pls. Opp'n to Defs. Mot. Summ. J. 19; Pls. Add'l S.M.F. ¶¶ 93-94.) Plaintiffs' legal expert, Attorney Petruccelli, also testified that, in his opinion, if only one witness was permitted to testify regarding causation, it should have been Dr. Rioux. (Pls. Add'l S.M.F. ¶ 99.)

Regarding their second assertion, Plaintiffs argue the Lilley Defendants' failed to provide the court in *Wilson v. Mercy* with the leading case on the one-expert-per-issue rule, *Gierie v. Mercy Hospital*, 2009 ME 45, 969 A.2d 944. (Pls. Opp'n to Defs. Mot. Summ. J. 20.) Plaintiffs assert the Lilley Defendants should have argued to the court that Dr. Rioux's testimony was admissible under *Gierie* and should have framed Dr. Rioux's testimony so as to ensure the court would permit testimony from both experts. (*Id.*) In support their argument, Plaintiffs cite Attorney Nyhan's testimony that, under *Gierie*, if experts "are going to be offered on different facets or aspects on either liability or causation, they're not necessarily duplicative and they need not be excused." (Pls. Add'l S.M.F. ¶ 104.) Plaintiffs' legal expert, Attorney Petruccelli, also

15

opined that, if properly managed by the Lilley Defendants, both Dr. Rioux and Dr. Hiatt should have been able to testify at trial. (*Id.* ¶ 99.)

Although there may be genuine issues of material fact whether the Lilley Defendants breached the standard of care, Plaintiffs have failed to put forth prima facie evidence that the Lilley Defendants' failure to call Dr. Rioux as a witness proximately caused injury to Cassidy Wilson or that, but for Lilley Defendants' failure, Cassidy Wilson would have obtained a more favorable result. Plaintiffs cite only to Attorney Nyhan's deposition testimony as evidence of causation. (Pls. Opp'n to Defs. Mot. Summ. J. 20-21.) According to Attorney Nyhan, the Lilley Defendants' decision not to call Dr. Rioux as a witness "made the plaintiffs' job of persuading the factfinders, the jury in this case, of the correctness or validity of their position much harder." (Pls. Add'l S.M.F. ¶ 101.) Attorney Nyhan also disagreed with the proposition that "the Wilson case was a tough case for a plaintiff" because the Medical Defendants did not call their own causation expert and because Cassidy's treating physician, Dr. Rioux, could have testified as to causation. (*Id.* ¶ 102.) Plaintiffs cite no testimony from their legal expert, Attorney Pettucelli, regarding causation on this issue.

Attorney Nyhan's testimony is not prima facie evidence of causation. Attorney Nyhan's testimony demonstrates only that the Lilley Defendants' failure to call Dr. Rioux may have made their case more difficult. Attorney

16

Nyhan offered no evidence or opinion whether the Lilley Defendants' failure to call Dr. Rioux actually played a substantial part in or directly caused the jury to find for the Medical Defendants. Attorney Nyhan also offered no evidence or opinion that, but for the Lilley Defendants' decision, Cassidy Wilson would have achieved a more favorable result at trial.

Because Plaintiffs have not put forth any evidence demonstrating that the Lilley Defendants decision not to call Dr. Rioux caused the jury to find for the Medical Defendants, the Lilley Defendants are entitled to summary judgment on Plaintiffs' claim that the Lilley Defendants committed legal malpractice by failing to call Dr. Rioux as a witness at trial.

C. Holly Wilson's and Ryan Wilson's Individual Claims for Legal Malpractice

Plaintiffs assert that the Lilley Defendants breached the duty of care owed to Holly Wilson and Ryan Wilson by failing to file notice of her individual claims against the Medical Defendants within the three-year statute of limitations. (Pls. Opp'n to Defs. Mot. Summ. J. ¶¶ 21-22.) The Lilley Defendants filed a notice of claim against the Medical Defendants, which included individual claims on behalf of Holly and Ryan, on May 20, 2005. (Pls. Add'l S.M.F. ¶¶ 37-38; Defs. Reply S.M.F. ¶¶ 37-38.) The Lilley Defendants filed a complaint including individual claims on behalf of Holly and Ryan on January 2, 2009. (*Id.* ¶ 41; Pls. Ex. 23.) The Medical Defendants moved to

17

dismiss Holly's and Ryan's individual claims as barred by the statute of limitations. (*Id.* ¶ 49.) On the first day of the *Wilson v. Mercy* trial, the court dismissed Holly's and Ryan's individual claims as time-barred. (*Id.* ¶ 52.)

Failure to commence a suit on behalf of a client prior to the expiration of the applicable statute of limitations is commonly a breach of the standard of care. Simmons, Zillman, & Gregory, *Maine Tort Law*, § 9.25 at 9-62 (2004 ed.). The Lilley Defendants assert that Plaintiffs cannot establish that any breach of the standard of care by the Lilley Defendants proximately caused injury to Holly Wilson or Ryan Wilson because any possible individual claims against the Medical Defendants would have failed as a matter of law. (Defs. Mot. Summ. J. 13.) Plaintiffs assert that Holly Wilson had viable malpractice claims against the Medical Defendants for both physical injuries and her emotional distress. (Pls. Opp'n to Defs. Mot. Summ. J. 22-26.) Plaintiffs also assert that Ryan Wilson had a viable claim for negligent infliction of emotional distress based on bystander liability. (*Id.* at 29-33.)

### 1. Whether Holly Wilson had a viable claim for her physical injuries

The court first addresses whether Holly Wilson had a viable medical malpractice claim for physical injuries against the Medical Defendants because, if she had a viable claim, then any claim for negligent infliction of emotional distress is subsumed by the separate tort. *See Curtis v. Porter*, 2001 ME 158,

18

¶ 19, 784 A.2d 18. In order to establish a viable medical malpractice claim for physical injuries, a plaintiff must produce prima facie evidence of (1) the appropriate standard of medical care, (2) that the defendant breached the standard of care, and (3) that defendant's breach was the proximate cause of the plaintiff's injury. *Ouellette v. Mehalic*, 534 A.2d 1331, 1332 (Me. 1988). Ordinarily, the plaintiff must prove these elements through expert medical testimony. *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979). The only physical injuries resulting from the Medical Defendants' conduct identified by Holly Wilson were a vertical, rather than horizontal scar from the emergency cesarean section and a post-delivery incisional infection.[4] (Defs. Supp'g S.M.F. ¶ 25.)

However, Plaintiffs' own medical expert conceded that Holly Wilson's physical injuries were not the result of a breach of the standard of care owed to

---

[4]  The Lilley Defendants assert that Plaintiffs' expert witness designation of Dr. Carpenter also identified Holly's longer period of contractions as her primary physical injury. (Defs. Supp'g S.M.F. ¶ 26.) In response, Plaintiffs assert Dr. Carpenter will also opine that Holly experienced a prolonged labor as resulting from the Medical Defendants' conduct. (Pls. Opp. S.M.F. ¶ 26.) Both parties have failed to provide proper evidentiary support for these assertions. Rule 56 provides that all statements of material fact must be supported by citation to record evidence. M.R. Civ. P. 56(h)(4). The record evidence cited must be "of a quality that could be admissible at trial." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653. The court may disregard any assertions of fact not properly supported. M.R. Civ. P. 56(h)(4). Both parties cite only to Plaintiffs' expert witness designation of Dr. Carpenter to support their assertions. (Defs. Supp'g S.M.F. ¶ 26; Pls. Opp. S.M.F. ¶ 26.) An expert witness designation is not admissible evidence. Therefore, the court may disregard these assertions.

19

Holly by the Medical Defendants. At his deposition in this case, Dr. Carpenter testified that, assuming all of the events surrounding Cassidy's birth occurred as reflected in the medical records, but Cassidy was born a healthy child, it was not a breach of the standard of care for Holly Wilson to have a vertical scar from the emergency caesarean section or a post-operative infection. (Defs. Supp'g S.M.F. ¶¶ 34-35; Pls. Opp. S.M.F. ¶¶ 34-35.) Because Holly's physical injuries were not the result of a breach of the duty of care owed to her, Holly Wilson had no viable claim against the Medical Defendants for her physical injuries.

### 2. Whether Holly Wilson had a viable claim for negligent infliction of emotional distress

Plaintiffs assert that, even absent a claim for her physical injuries, Holly Wilson still had a viable claim against the Medical Defendants for negligent infliction of emotional distress. (Pls. Opp'n to Defs. Mot. Summ. J. 23-25.) Absent a physical injury or the existence of another tort, there is generally no duty to avoid causing emotional harm to others. *Curtis*, 2001 ME 158, ¶¶ 18-19, 784 A.2d 18. Our Law Court has recognized a duty to act reasonably to avoid causing emotional harm in two limited circumstances: (1) if the circumstances permit the plaintiff to recover under a theory of bystander liability, or (2) where a special relationship exists between the defendant and the emotionally harmed plaintiff. *Id.* ¶ 19. A doctor-patient relationship is a special relationship. *See Bolton v. Caine*, 584 A.2d 615, 618 (Me. 1990); *Rowe*

20

*v. Bennett*, 514 A.2d 802, 807 (Me. 1986). A claim for negligent infliction of emotional distress requires evidence of "severe" emotional distress. *Curtis*, 2001 ME 158, ¶ 20, 784 A.2d 18.

The parties dispute whether as a matter of law Holly Wilson's claim for negligent infliction of emotional distress was a direct claim for emotional distress damages against the Medical Defendants or whether she was limited to bystander liability. The Lilley Defendants argue that a mother's claim for negligent infliction of emotional distress resulting from negligence during the birth of her child is solely a claim for bystander liability. (Defs. Reply to Pls. Opp'n to Defs. Mot. Summ. J. 10-12.) Plaintiffs, on the other hand, assert that the duty of care owed to a mother and an unborn child during labor and delivery cannot be separated and that a mother may bring a direct claim for negligent infliction of emotional distress for negligence that occurred during birth. (Pls. Opp'n to Defs. Mot. Summ. J. 24-26.) Alternatively, Plaintiffs assert that Holly Wilson had viable claim based bystander liability. (*Id.* at 22 n.8.)

The court need not decide whether a mother may assert a direct claim for negligent infliction of emotional distress resulting from negligence during the birth of her child or whether a mother is limited to bystander liability. Our Law Court has stated that a claim for negligent infliction of emotional distress against a medical professional is simply a type of medical malpractice claim.

21

*Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 3 n.3, 711 A.2d 842. Thus, like other medical malpractice claims, a plaintiff must prove their claim for negligent infliction of emotional distress through expert medical testimony. *Cox*, 406 A.2d at 622.

Assuming Holly Wilson may assert a direct claim against the Medical Defendants for emotional distress resulting from negligence during the birth of her child, in order to survive summary judgment, Holly must set forth expert testimony demonstrating: (1) the appropriate standard of medical care, (2) that the defendant breached the standard of care, and (3) that defendant's breach was the proximate cause of the plaintiff's injury. *Ouellette*, 534 A.2d at 1332; *Cox*, 406 A.2d at 622; *cf. Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 18.

Plaintiffs have failed to cite any expert testimony establishing the appropriate medical standard of care owed to Holly regarding her emotional well-being, that the Medical Defendants breached that standard of care, or that the Medical Defendants' breach proximately caused Holly's severe emotional

distress.[5] Because Plaintiffs have failed to cite any expert testimony, Plaintiffs have failed to put forth prima facie evidence demonstrating that Holly Wilson had a viable direct claim for negligent infliction of emotional distress against the Medical Defendants.

Even if Holly Wilson were limited to bystander liability, Plaintiffs have still not put forth sufficient evidence that she had a viable claim against the Medical Defendants. In order for a bystander to recover for negligent infliction of emotional distress, the bystander must demonstrate: (1) that they were present at the scene of the defendant's conduct; (2) that they "suffered severe mental distress as a result of contemporaneously perceiving" that the defendant's conduct was causing harm to the victim; and (3) that they were closely related to the victim. *Champagne*, 1998 ME 87, ¶ 13, 711 A.2d 842; *Nelson v. Flanagan*, 677 A.2d 545, 548-49 (Me. 1996); Simmons, Zillman, & Gregory, *Maine Tort Law*, § 7.08 at 7-21 (replacing "accident" with

[5] In their statement of material facts, Plaintiffs assert that Dr. Carpenter is designated to testify the Medical Defendants breached the standard of care owed to Holly Wilson and that the Medical Defendants' substandard care caused Holly to suffer anxiety and distress. (Pls. Opp. S.M.F. ¶ 26; Pls. Add'l S.M.F. ¶¶ 29-30.) However, Plaintiffs have failed to cite any testimony by Dr. Carpenter actually testifying to the standard of care owed to Holly regarding her emotional well-being or that Medical Defendants breached that standard of care. (*Id.*) Plaintiffs cite only to Dr. Carpenter's expert witness designations in the *Wilson v. Mercy* case and in this case to support these assertions. (*Id.*) As previously stated, expert witness designations are not admissible evidence. Therefore, the court may disregard these assertions. *See* M.R. Civ. P. 56(h)(4); *Levine*, 2001 ME 77, ¶ 6, 770 A.2d 653.

23

"defendant's conduct" in the standard for bystander liability in medical negligence cases).

It is indisputable that Holly Wilson was present at the scene of the Medical Defendant's conduct and that she is closely related to Cassidy Wilson, the victim. Thus, the only disputed element for bystander liability is whether Holly "suffered severe mental distress as a result of contemporaneously perceiving" that the Medical Defendant's conduct was causing the harm to Cassidy. The Lilley Defendants assert that a bystander must demonstrate that her mental distress was the result of contemporaneously perceiving both the defendant's negligence and the harm to the victim. (Defs. Mot. Summ. J. 16.) Plaintiffs argue there is no requirement that a bystander contemporaneously comprehend that a defendant's conduct is negligent in order to recovery for their severe emotional distress. (Pls. Opp'n to Defs. Mot. Summ J. 30-31.) According to Plaintiffs, a bystander need only show a contemporaneous awareness of the "accident," i.e., the injury to the victim. (*Id.* at 31.)

In *Nelson v. Flanagan*, the Law Court explicitly stated that, because the plaintiff's emotional distress was "not the result of an immediate perception of [the defendant's conduct] he does not come within the class of plaintiffs who... are foreseeable indirect victims of a defendant's negligence." *Nelson*, 677 A.2d at 548. Quoting a California case, the Law Court further stated, "'when there is

24

observation of the defendant's conduct and the... injury **and** contemporaneous awareness the defendant's conduct or lack thereof is causing harm... recovery is permitted.'" *Id.* at 549 (quoting *Ochoa v. Superior Court*, 703 P.2d 1, 8 (Cal. 1985)) (alterations and emphasis in original). Thus, although a bystander need not show contemporaneously awareness that the defendant's conduct was negligent, in order to recover for negligent infliction of emotional distress, the bystander must prove that their severe mental distress is a result of contemporaneously perceiving that the defendant's conduct was causing the harm to the victim.

Plaintiffs have failed to put forth prima facie evidence that Holly Wilson's severe emotional distress was the result of contemporaneously perceiving that the Medical Defendants' conduct was causing the harm to Cassidy. Holly testified that she could see the fetal heart monitor and was told where the heartbeat was on the monitor. (Pls. Opp. S.M.F. ¶ 3; Pls. Add'l S.M.F. ¶ 9.) Holly testified that she was aware that Cassidy "lost her heartbeat three times in delivery and labor" and that she "knew something was wrong." (Pls. Opp. S.M.F. ¶ 3.) At point one during the labor, Holly was told to get on her hands and knees because there was no fetal heart rate. (Pls. Opp. S.M.F. ¶ 3; Pls. Add'l S.M.F. ¶ 12.) Holly thought that something serious had happened and that this was a "life or death moment" for her baby. (*Id.*) The next thing Holly

25

knew, she was going down the hall on a stretcher for an emergency caesarean section. (Pls. Opp. S.M.F. ¶ 3; Pls. Add'l S.M.F. ¶ 14.) When Holly came out of the anesthesia, she was in hysterics because she did not know what she had or where her baby was. (Pls. Opp. S.M.F. ¶ 3; Pls. Add'l S.M.F. ¶ 18.) Although these facts demonstrate that Holly Wilson suffered emotional distress, none of these facts are prima facie evidence that Holly's emotional distress was the result of contemporaneously perceiving that the Medical Defendants' conduct was causing the harm to Cassidy.[6]

To the contrary, Holly Wilson testified that, during the delivery, she did not know if her doctor "was doing something they should not have done or not doing something that they should have done." (Defs. Supp'g S.M.F. ¶ 3.) Holly testified that that she "put all the trust in doctors because I am not one." (*Id.*) Ryan Wilson also testified that, after the delivery, Holly thought "she had done

---

[6] In their statement of material facts, Plaintiffs assert that Dr. Carpenter is designated to testify that Holly Wilson suffered anxiety and distress due to experiencing the delivery and birth of a child that was "floppy, not breathing, unresponsive, and requiring emergency transfer to a neonatal ICU." (Pls. Opp. S.M.F. ¶ 26.) Defendants similarly assert in their statement of material facts that Dr. Carpenter would testify regarding Holly's distress from seeing a "floppy" child. (Defs. Supp'g S.M.F. ¶ 27.) Both parties have failed to provide proper evidentiary support for these assertions. The parties cite only to Plaintiffs' expert witness designation to support their assertions. (Pls. Opp. S.M.F. ¶ 26; Defs. Supp'g S.M.F. ¶ 27.) As previously discussed, an expert witness designation is not admissible evidence. Therefore, the court may disregard these assertions. *See* M.R. Civ. P. 56(h)(4); *Levine*, 2001 ME 77, ¶ 6, 770 A.2d 653. Even if the court were to consider these assertions of facts, these assertions demonstrate only that Holly Wilson suffered emotional distress, neither assertion is prima facie evidence that Holly's emotional distress "was the result of contemporaneously perceiving" that the Medical Defendants' conduct was causing the harm to Cassidy.

26

something wrong" and was "blaming herself for not being able to give birth." (Defs. Supp'g S.M.F. ¶ 5.) Based on the record before the court, Plaintiffs have failed put forth any evidence that Holly's emotional distress was the result of contemporaneously perceiving the Medical Defendants' conduct was causing the harm to Cassidy. Therefore, Plaintiffs have failed to put forth prima facie evidence establishing that Holly Wilson had a viable claim for bystander liability.

Because Plaintiffs have failed to demonstrate that Holly Wilson had any viable claims against the Medical Defendants for personal injuries or emotional distress, Plaintiffs have failed to show that any breach of a standard of care by the Lilley Defendants proximately caused injury to Holly Wilson or that, but for the alleged breach, Holly would have achieved a more favorable result. Therefore, the Lilley Defendants are entitled to summary judgment on Holly Wilson's individual claim for legal malpractice.

### 3. Whether Ryan Wilson had a viable claim for negligent infliction of emotional distress

As discussed above, in order for a bystander to recovery for negligent infliction of emotional distress, the bystander must demonstrate: (1) that they were present at the scene of the defendant's conduct; (2) that they "suffered severe mental distress as a result of contemporaneously perceiving" that the defendant's conduct was causing harm to the victim; and (3) that they were closely related to the victim. *Champagne*, 1998 ME 87, ¶ 13, 711 A.2d 842;

27

*Nelson*, 677 A.2d at 548-49; Simmons, Zillman, & Gregory, *Maine Tort Law*, § 7.08 at 7-21 (replacing the term "accident" with "defendant's conduct"). In order to satisfy the second element, the bystander must prove that their severe mental distress is a result of contemporaneously perceiving that the defendant's conduct was causing the harm to the victim. *Nelson*, 677 A.2d at 548-49.

Like Holly, there is no dispute that Ryan Wilson was present at the scene of the Medical Defendant's conduct and that he was closely related to the victim, Cassidy. However, Plaintiffs have failed to put forth prima facie evidence that Ryan's emotional distress was the result of contemporaneously perceiving that the Medical Defendants' conduct was causing the harm to Cassidy. During the *Wilson v. Mercy* trial, Ryan testified that he watched the fetal heart rate monitor "bounce right around," and that the heart rate monitor "dipped way down a couple times and I thought this didn't seem right..." (Pls. Opp. S.M.F. ¶ 4; Pls. Add'l S.M.F. ¶ 8.) Ryan also testified at trial that, at some point during the labor, he saw the heart rate monitor drop and stay low for a while, a which point the nurse ran out to get Dr. Roper. (Pls. Opp. S.M.F. ¶ 4; Pls. Add'l S.M.F. ¶ 10.) At his deposition, Ryan testified that that he witnessed "a heated argument" between the nurse and Dr. Roper and thought "this can't be good." (*Id.*) In an affidavit, Holly Wilson asserts that Ryan could see the fetal

28

monitoring strip and that watching decelerations on the fetal monitoring strip made Ryan anxious and fearful of the status of the baby. (Pls. Add'l S.M.F. ¶ 9.) According to Holly, as time progressed and Dr. Roper did nothing to deliver the baby, Ryan became increasingly upset. (*Id.*)

Although these facts demonstrate that Ryan Wilson suffered emotional distress, none of these facts are prima facie evidence that Ryan contemporaneously perceived that the Medical Defendants' conduct was causing the harm to Cassidy. Furthermore, when asked at his deposition whether he had "any sense that anybody was doing anything wrong with regard to your wife's care," Ryan answered, "Other than the fight between [the nurse] and Dr. Roper, no." (Defs. Supp'g S.M.F. ¶ 6.)

Based on the record before the court, Plaintiffs have failed put forth any evidence that Ryan's emotional distress was the result of contemporaneously perceiving that the Medical Defendants' conduct was causing the harm to Cassidy. Therefore, Plaintiffs have failed to put forth prima facie evidence establishing that Ryan Wilson had a viable claim for bystander liability.

Because Plaintiffs have failed to demonstrate that Ryan Wilson had a viable claim against the Medical Defendants, Plaintiffs have failed to show that any breach of a standard of care by the Lilley Defendants proximately caused injury to Ryan Wilson or that, but for the alleged breach, Ryan would have

29

achieved a more favorable result. Therefore, the Lilley Defendants are entitled to summary judgment on Ryan Wilson's individual claim for legal malpractice.

### D.   Plaintiffs' Claims for Breach of Fiduciary Duty

As mentioned above, Plaintiffs' amended complaint also asserts claims for breach of fiduciary. Plaintiffs' claims for breach of fiduciary are identical to their claims legal malpractice. As discussed above, in legal malpractice actions, the same rules of causation apply whether the claims are based in negligence, contract, or breach of fiduciary duty. *Steeves*, 1998 ME 210, ¶ 10 n.8, 718 A.2d 186. Because Plaintiffs have failed to set forth prima facie evidence of causation for any of their claims of legal malpractice, Plaintiffs' claims for breach of fiduciary duty fail for the same reasons. Therefore, the Lilley Defendants are also entitled to summary judgment on Plaintiffs' claims that the Lilley Defendants breach their fiduciary duty to Cassidy, Holly, and Ryan.

### E.   Plaintiffs' Claim for Fraud and Fraudulent Concealment

Lastly, Plaintiffs assert that the Lilley Defendants engaged fraud and fraudulent concealment by knowingly failing to disclose to Holly Wilson and Ryan Wilson that their individual claims were time-barred. (Pls. Opp'n to Defs. Mot. Summ. J. 6.)

To prevail on a claim of fraud, the plaintiff must prove by clear and convincing evidence that (1) the defendant a made a false representation; (2)

30

of a material fact; (3) with knowledge of its falsity or in reckless disregard of its truth or falsity; (4) for the purpose of inducing the plaintiff to act in reliance upon it; and (5) the plaintiff justifiably relied upon the fact as true to their detriment. *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 12, 942 A.2d 707.

Similarly, to prevail on a claim of fraudulent concealment, the plaintiff must prove the existence of "(1) a failure to disclose; (2) a material fact; (3) where a legal or equitable duty to disclose exists; (4) with the intention of inducing another to act or to refrain from acting in reliance on the non-disclosure; and (5) which is in fact relied upon to the aggrieved party's detriment." *Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67, ¶ 30, 974 A.2d 286.

Plaintiffs generally assert that, throughout the representation, the Lilley Defendants never informed Holly or Ryan their individual claims were time-barred, that the Lilley Defendants had failed to file their individual claims within the statute of limitations, or that their individual claims had been dismissed by court. (Pls. Add'l S.M.F. ¶¶ 40, 45, 48, 51, 53.) Plaintiffs assert that Lilley told Holly and Ryan that he wanted to drop their individual claims, so that they would not appear "money hungry" to the jury. (*Id.* ¶ 53.)

31

However, Plaintiffs have not suffered a detriment, and therefore, cannot assert claims for fraud or fraudulent concealment. As discussed above, Plaintiff have failed to establish that Holly Wilson or Ryan Wilson had a viable claim against the Medical Defendants for physical injuries or negligent infliction of emotional distress. Therefore, even if the Lilley Defendants' conduct constituted a material misrepresentation or a failure to disclosure a material fact, Plaintiffs cannot establish that they relied on those misrepresentations or non-disclosures to their detriment. Thus, the Lilley Defendants are entitled to summary judgment on Plaintiffs' claims of fraud and fraudulent concealment.

## CONCLUSIONS

Based on the foregoing, Defendants Daniel G. Lilley, P.A. and Daniel G. Lilley, Esq.'s motion for summary judgment is **GRANTED**. Judgment is entered for Defendants and against Plaintiffs on Counts 1, 2 and 3, which is the Complaint in its entirety.

Still pending and unresolved by this ruling is Defendants' Counterclaim. Defendants shall within 14 days notify the Court of their intentions regarding the Counterclaim. The Court would entertain a motion to dismiss the Counterclaim without prejudice, subject to the Counterclaim being renewed if any part of Plaintiffs' Complaint is reinstated on appeal.

32

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 12/21/16

_____
Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 12-21-16
Copies sent via Mail ___ Electronically ✓

33

STATE OF MAINE                    BUSINESS AND CONSUMER COURT

Cumberland, ss.


HOLLY WILSON and RYAN WILSON,
individually and as next friends of CASSIDY WILSON

Plaintiffs

v.                                              Docket No. BCD-CV-15-16 ✓

DANIEL G. LILLEY, P.A.
and DANIEL G. LILLEY, ESQ.

Defendants

### ORDER ON DEFENDANTS' MOTION TO STRIKE AFFIRMATIVE DEFENSES

Pursuant to M.R. Civ. P. 9(b) and 12(f), Defendants Daniel G. Lilley, P.A. and Daniel G. Lilley, Esq. have filed a Motion To Strike Affirmative Defenses 4 and 6 to Defendants' Counterclaim. Plaintiffs Holly and Ryan Wilson oppose the Motion. The court elects to decide the Motion without oral argument.

In their reply to Defendants' counterclaim, Plaintiffs have pleaded fraud and fraud in the inducement as the fourth and sixth numbered affirmative defenses. Defendants contend that Rule 9(b) of the Maine Rules of Civil Procedure requires affirmative defenses, as well as claims, alleging fraud to be pleaded with particularity.

Plaintiffs' Objection to Defendants' Motion to Strike notes that the Maine courts require notice pleading only. Although "Maine is a notice pleading state, . . . only requir[ing] a short and plain statement of the claim to provide fair notice of the cause of action," *Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 19 A.3d 823, fraud must be pleaded in more detail than other matters. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake *shall be stated with particularity.* Malice, intent, knowledge, and other condition of

1

mind of a person may be averred generally." M.R. Civ. P. 9(b) (emphasis added); *cf.* M.R. Civ. P. 8. The requirement to plead fraud with particularity is to ensure "the defendant is fairly apprised of the elements of the claim." 2 Harvey, *Maine Civil Practice* § 9:2 at 384 (3d ed. 2011). Notably, the need for particularity in pleading fraud is not a new requirement in Maine. Any party

> seeking relief on the ground of fraud, accident or mistake, must directly charge the grounds relied upon. The statement should be so full and explicit as to show the court a clear picture of the particulars of the fraud, — the manner in which the party was misled, or imposed upon, — the character and causes of the accident, or mistake, and how it occurred. Without such a statement . . . the court can not grant relief or even hear evidence in the matter.

*Semo v. Goudreau*, 147 Me. 17, 20-21, 83 A.2d 209, 211 (1951).

Federal courts construing the counterpart federal Rule 9(b) are split on whether the rule applies to affirmative defenses. *See Cottle v. Falcon Holdings Management, LLC*, No. 2:11-CV-95-PRC, 2012 WL 266968, *1 (N.D. Ind. Jan. 30, 2012) (noting split among courts on the issue).

The Supreme Judicial Court of Maine has not indicated whether the particularity in pleading requirement of Rule 9(b) applies to affirmative defenses as well as to claims. However, the United States Court of Appeals for the First Circuit has said, "Fraud is an affirmative defense that must be pleaded with particularity." *Bose Corp. v. Ejaz*, 732 F.3d 17, 22 (1st Cir. 2013), *citing* Fed. R. Civ. P. 9(b). Because the Law Court frequently follows the First Circuit's lead in interpreting federal rules that have Maine counterparts, this court concludes that the Law Court likely would decide that the Rule 9(b) requirement of particularity applies to affirmative defenses as well as to claims and causes of action. In sum, although Maine follows the rule of notice pleadings, claims and affirmative defenses based on fraud are an exception to the general rule. *See Kaufmann v. Prudential Ins. Co. of America*, No. 09-10239-RGS, 2009 WL

2

2449872, *1 (D. Mass. Aug. 6, 2009) ("[w]ith the exception of fraud, the designation of a listed defense is sufficient notice to a plaintiff of its basic thrust.")

Plaintiffs also argue that the basis for their affirmative defenses of fraud and fraud in the inducement should be obvious, given that their complaint against Defendants includes a claim of fraud and fraudulent concealment at Count III. The inference may indeed be obvious, but the Defendants are still entitled to require the Plaintiffs to make the inference explicit, which they can do simply by incorporating the paragraphs of Count III by reference in pleading their affirmative defenses of fraud and fraud in the inducement.

Based on these reasons, the court will grant the Defendant's Motion to Strike. Plaintiffs have requested leave to amend, in order to meet the objection, and leave will be granted.

IT IS ORDERED: Defendants' Motion To Strike Affirmative Defenses 4 and 6 to Defendants' Counterclaim is granted. Plaintiffs' fourth and sixth numbered affirmative defenses to the counterclaim, of fraud and fraud in the inducement, are stricken. Plaintiffs may file an amended reply to counterclaim, with affirmative defenses 4 and 6 pleaded with particularity within 20 days.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference in the docket.

Dated April 9, 2015

A. M. Horton
Justice, Business and Consumer Court

3

**Holly Wilson and Ryan Wilson, individually
and as next friends of Cassidy Wilson v.
Daniel G. Lilley, P.A. and Daniel G. Lilley, Esq.**

BCD-CV-2015-16

**Holly Wilson and Ryan Wilson, individually
and as next friends of Cassidy Wilson
   Plaintiff**

   Counsel:                          Julian Sweet, Esq.
                                     Travis Brennan, Esq.
                                     129 Lisbon Street
                                     PO Box 961
                                     Lewiston, ME 04243-0961

**Daniel G. Lilley, P.A. and Daniel G. Lilley, Esq.
   Defendant**

   Counsel:                          Jay Gregory, Esq.
                                     One International Place 11th Floor
                                     Boston, MA 02110
                                     and
                                     Arthur Grief, Esq.
                                     82 Columbia Street
                                     PO Box 2339
                                     Bangor, ME 04402-2339